UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| TAMBERLY ROBERTS, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) No. 1:13-cv-00572-JMS-MJD |
| CAROLYN COLVIN, | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

Plaintiff Tamberly Roberts requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

## I. Procedural History

Roberts filed this application for SSI on April 6, 2011, alleging an onset of disability of January 1, 2004.[1] Roberts' application was denied initially and on reconsideration. Roberts requested a hearing, which was held on April 13, 2012 before Administrative Law Judge Ronald T. Jordan ("ALJ"). The ALJ denied Roberts' application on May 18, 2012. The Appeals Council denied Roberts' request for review on February 8, 2013, making the ALJ's decision the final

---

[1] Roberts previously filed an application for disability insurance benefits on February 13, 2008 alleging disability beginning January 1, 2004. A decision was issued on March 19, 2010 finding Roberts not disabled. The ALJ accordingly began the relevant period of inquiry at March 20, 2010. Roberts does not challenge the ALJ's determination of the disability period.

decision for purposes of this review. Roberts filed her Complaint with the Court on April 5, 2013.

## II.  Factual Background

Tamberly Roberts was 51 years old on the date of filing with past relevant work experience as a housekeeper. The record reflects that Roberts has a history of chronic obstructive pulmonary disease ("COPD"), high blood pressure, obesity, reduced visual acuity, and dystymia. She has been treated for many years by her primary care physician Michael Emmons, D.O.

In November 2011, Dr. Emmons completed a Residual Functional Capacity Questionnaire on behalf of Roberts. Dr. Emmons opined that Roberts could stand/walk up to 15 minutes at one time and no more than an hour in an 8-hour workday, and that Roberts could sit up to 30 min at one time and no more than 2 hours in a workday. Dr. Emmons also opined that Roberts could only lift up to 10 pounds occasionally and could never lift 20 pounds or more. It was also Dr. Emmons opinion that Roberts would need to be absent from work more than four times a month.

Dr. Emmons also completed a Mental Capacity Assessment. In it, he opined that Roberts has significant limitations in understanding and memory, concentration and persistence, social interaction, and adaptation.

In January 2011, Roberts went for a consultative examination with the Disability Determination Bureau ("state agency") where she was examined by Dr. Donald Perez for her visual impairment. Dr. Perez opined that Roberts would have problems with work that required fine discrimination or required rapidly moving objects coming from her periphery.

Another state agency physician, J.V. Corcoran, M.D., examined Roberts' medical record with regard to her physical impairments and provided a case analysis and assessment in May

2011. Dr. Corcoran opined that Roberts' physical impairments were not severe for a twelve-month duration. In June 2011, Dr. Corcoran completed a Physical Residual Functional Capacity Assessment. In it, Dr. Corcoran opined that Roberts could lift up to 50 pounds occasionally and 25 pounds frequently. Dr. Corcoran also opined that Roberts could stand/walk for about six hours in a workday and sit for six hours in a workday. Dr. Corcoran indicated that Roberts has visual limitations that would affect her work, as well as environmental limitations. For the environmental limitations, Dr. Corcoran recommended that Roberts should avoid concentrated exposure to hazards including machinery and heights.

With regard to her mental impairments, in May 2011, Roberts underwent a psychological consultative examination with state agency psychologist Thomas Murray, Ed.D., HSPP. Dr. Murray provided a primary diagnosis of Dysthymic Disorder and opined that Roberts would have moderate to significant impairment in performing work-related activities. He further opined that her impairment was emotional in nature and would limit her ability to relate to others and to concentrate.

Following the psychological consultative examination, state agency psychologist B. Randal Horton, Psy.D., completed a Psychiatric Review Technique. He evaluated Roberts' mental impairments under Listing 12.04 Affective Disorders and concluded that her impairments were not severe. In rating Roberts' functional limitations under the "paragraph B" criteria,[2] Dr. Horton opined that Roberts did not have any limitations in any of the areas and experienced no episodes of decompensation of extended duration.

---

[2] As required by the Listing of Impairments, 20 C.F.R. Part 404 Subpart P, Appendix 1, to meet one of the listed mental impairments, a claimant must satisfy the criteria in either "paragraph B" or "paragraph C." To satisfy "paragraph B," the claimant must demonstrate at least two areas of marked impairments in the following areas: activities of daily living; social functioning; or concentration, persistence, or pace. "Paragraph B" may also be satisfied if the claimant has one area of marked impairment and at least one episode of decompensation, each of extended duration.

At the hearing, two impartial medical experts testified. With regard to Roberts' physical impairments, Dr. Gerald Greenberg opined that Roberts could lift 20 pounds, but she should be limited to at least sedentary work, but could comfortably perform light work.

Don Olive, Ph.D. testified as to Roberts' mental impairments. Dr. Olive opined that Roberts' impairments did not equal a listing. With regard to the "paragraph B" criteria, it was Dr. Olive's opinion that Roberts had mild limitations in activities of daily living; mild to moderate limitations in social functioning; and moderate limitations in concentration, persistence, or pace.

### III. Legal Standard

To be eligible for SSI, a claimant must have a disability under 42 U.S.C. § 1382c. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of

Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### IV.  The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Roberts had not engaged in substantial gainful activity since April 6, 2011, the application date. At step two, the ALJ found that Roberts had the following severe impairments: chronic obstructive pulmonary disease, high blood pressure, obesity, reduced visual acuity, and dysthymia.

5

At step three, the ALJ determined that Roberts did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

Next, the ALJ found that Roberts had the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 416.967(b). Specifically, the ALJ determined that Roberts could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight-hour workday; sit six hours in a workday; occasionally balance, stoop, crouch, crawl, kneel and climb stairs or ramp; Roberts could never climb ladders, ropes or scaffolds or work around hazards, such as unprotected heights or unguarded, dangerous, moving machinery; Roberts could never perform work requiring assembly of small items the size of small nuts or bolts; no reading of fine print; no assembly line work; and the work is to be limited to simple, repetitive tasks, requiring no independent judgment regarding work processes; have work goals that are static and predictable; and work requiring only occasional contact with the public and coworkers.

At step four, the ALJ determined that Roberts was capable of performing her past relevant work as a housekeeper. Therefore, the ALJ determined that Roberts was not disabled.

## V. <u>Discussion</u>

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Roberts was not disabled. *Dixon*, 270 F.3d at 1176. Plaintiff raises five arguments on review: 1) the ALJ erred in his RFC analysis by failing to incorporate Roberts' need for an oxygen tank; 2) substantial evidence does not support the ALJ's determination that Roberts could perform light work; 3) the ALJ's analysis of Roberts' psychological impairments

6

is not supported by substantial evidence; 4) the ALJ impermissibly substituted his own judgment for that of the treating physician; and 5) the ALJ erred in the assessment of Roberts' credibility.

### A. Oxygen Tank

Roberts first argues that the ALJ failed to address Roberts' oxygen use and should have incorporated it in the RFC. Roberts points to the hearing transcript where Roberts' informed the ALJ that she has been on oxygen 24 hours a day, 7 days a week since her stroke. [*See* R. at 54-55.] Roberts also points to medical notes that indicate that she is using two liters of oxygen at all times. [*See* R. at 605, 608, 609, 612, and 634.] Carrying an oxygen tank, Roberts argues, would interfere with her ability to perform work as a housekeeper.

The Court finds that any failure to discuss Roberts' need for oxygen was harmless. First, Roberts was represented by an attorney at the time of the hearing and when presented with the opportunity to ask the vocational expert ("VE") questions or pose his own hypothetical RFC or further limit the ALJ's RFC to incorporate the need for an oxygen tank, the attorney declined to do so. [R. 73.] In fact, Roberts' attorney agreed with the hypotheticals posed by the ALJ, stating that "[y]ou've actually given all the hypos I was going to give." [*Id*.] As Roberts was represented by counsel, he is presumed to have made his best case before the ALJ. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

Further, while Roberts points to medical evidence noting her oxygen use, there was nothing in the record that required or even suggested that Roberts be on oxygen 24 hours a day, 7 days a week. Therefore, the Court finds that any error in failure to discuss Roberts' need for oxygen was harmless.

### B. RFC

Roberts also challenges the ALJ's RFC analysis with regard to his determination that Roberts could perform light work. Specifically, Roberts argues that the ALJ did not properly explain his reason for rejecting Dr. Greenberg's opinion that Roberts be limited to sedentary work. While it is true that, at the hearing, Dr. Greenberg initially opined that Roberts be limited to sedentary work, most of Dr. Greenberg's testimony was that Roberts should be limited to "at least" sedentary work, and that Roberts could comfortably perform light work. [R. at 64, 66.] Dr. Greenberg also felt that Dr. Emmons' opinion was too restrictive and the state agency physicians' were not restrictive enough. [R. at 63-64.] For example, Dr. Greenberg opined that Roberts would have difficulty lifting 50 pounds, as suggested by the state agency physicians. [R. 64.] However, Dr. Greenberg believed Roberts could lift 20 pounds occasionally. [*Id.*] This is consistent with the definition of light work. *See* 20 C.F.R. 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). As discussed above, Roberts' attorney agreed with the ALJ's hypothetical RFC which incorporated light work. Therefore, substantial evidence supports the ALJ's determination of the RFC.

### C. Psychological Impairments

Roberts next criticizes the ALJ's analysis of Roberts' psychological impairment, overall arguing that it is not supported by substantial evidence. However, the ALJ's analysis appears to be consistent with the testimony of medical expert Dr. Olive, whose opinion Roberts does not challenge. Dr. Olive did not find any supportive data for Dr. Emmons' opinion that Roberts could not perform even simple, repetitive tasks. [R. 69.] Roberts' challenges the ALJ's analysis of the paragraph B criteria, the conclusions of which were substantially similar to Dr. Olive's.

8

[*Id*.] The Court does not find any error with the ALJ's analysis and whatever errors there may be are harmless, as the ALJ's determinations regarding Roberts' psychological impairments are supported by substantial evidence.

### D. The Treating Physician

Next, Roberts argues that Dr. Emmons' opinion should have been given controlling weight and the ALJ impermissibly substituted his opinion for that of the treating source. The opinion of the treating physician is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Here, the ALJ found that Dr. Emmons' opinion was conclusory and not supported by medical evidence or even an explanation. [R. at 36.] This is consistent with the opinions of both medical experts who testified that there is no support for Dr. Emmons' extreme restrictions. [R. at 63-64, 69.] Accordingly, the ALJ did not substitute his own opinion for that of the treating physician and did not err in failing to give Dr. Emmons' opinions controlling weight; rather, the ALJ properly considered and weighed Dr. Emmons' opinions in light of all the substantial evidence presented.

### E. Credibility

Finally, Roberts attacks the ALJ's credibility assessment. Roberts argues that the ALJ disregarded the intensity and persistence of her symptoms, did not address all factors in SSR 96-7p and made statements that were in direct contradiction to SSR 96-7p. Roberts also believes it to be reversible error for the ALJ to focus on the fact that Roberts continued to smoke after being diagnosed with COPD. Ordinarily, a court "will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (citations omitted). Roberts' arguments in this regard are general. She fails to direct the Court to the

intensity and persistence of her symptoms that she claims the ALJ disregarded, does not point to which factors in SSR 96-7p the ALJ failed to address, and does not explain how certain statements made by the ALJ were in direct contradiction to SSR 96-7p. While Roberts is correct that the failure to quit smoking is an unreliable basis to rest a credibility determination, *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000), that was not the ALJ's only basis for the credibility finding. [R. at 37.] Accordingly, the Court finds no reason to overturn the ALJ's determination based upon the ALJ's assessment of Roberts' credibility.

## VI.     Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's determination that Roberts was not disabled and the Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service of this Order shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 03/28/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jonelle L. Redelman
REDELMAN LAW
jonelle@redelmanlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov